THE STATE EX REL. W. H. RUTLEDGE and G. F. SNYDER v. PUBLIC
SERVICE COMMISSION, Appellants.

Division Two, December 20, 1926.

1. **ROAD CROSSING:** **Discontinuance:** **Jurisdiction.** It is doubtful whether the Public Service Commission has authority to order the discontinuance of a railroad crossing on the sole ground that it is of no further public use and offers a convenience to only three householders.

2. **PUBLIC SERVICE COMMISSION:** **Judicial Functions.** The Public Service Commission exercises no judicial functions; it has no authority to adjudicate and determine individual or personal rights; it has no authority beyond the express and literal terms of the Public Service Act. And the Legislature has no power to confer upon it judicial powers.

3. ————: **Road Crossing:** **Restoration:** **Individual Rights.** The Public Service Commission has no authority to order the restoration of a railroad crossing which had existed for many years and to continue which the private petitioners claim they have acquired a prescriptive right. Such a proceeding involves individual rights, which can be adjudicated only by a determination of the validity of the prescriptive right arising out of adverse user by the petitioners and the public. And the power of the Commission to restore the crossing is not affected by the fact that in a previous proceeding, to which the petitioners were not parties, the Commission had ordered the crossing discontinued, and the railroad company had removed it.

4. ————: ————: ————: ————: **Power of Circuit Court.** The Public Service Commission does not have jurisdiction to establish a railroad crossing where one does not exist upon the petition of private persons and in which the public is not concerned; and if the Commission makes an order dismissing the proceeding on the ground that it has no jurisdiction of the subject-matter, and the proceeding does in fact involve a judicial investigation and the determination of private rights, the circuit court, upon **certiorari**, has no power to set aside the order of dismissal and direct the Commission to grant the relief prayed for. The circuit court is limited by statute (Sec. 10522, R. S. 1919) to an affirmance or reversal of an order of the Commission; it cannot make a new order, or consider evidence that was not before the Commission.

Corpus Juris-Cyc. References: **Railroads**, 33 Cyc., p. 46, n. 39, 44; p. 47, n. 48; p. 52, n. 85; p. 53, n. 90; p. 290, n. 56.

Appeal from Cape Girardeau Circuit Court.—*Hon. Frank Kelly,* Judge.

REVERSED AND REMANDED.

*James F. Green* for appellant.

(1) The Public Service Commission, in making orders abolishing grade crossings, is in the exercise of the police power of the State

in the interest of public safety. Railroad v. Bristol, 151 U. S. 567; Erie Railroad v. Utility Comm., 254 U. S. 394; 2 Elliot on Railroads, p. 153; Wabash Railroad v. De France, 167 U. S. 88; Railroad v. Nebraska, 170 U. S. 57. (2) Sec. 10459, R. S. 1919, gives the Public Service Commission exclusive authority in the matter of crossings of railroads and the right to alter or abolish grade crossings when deemed necessary by the Commission. Such power has been uniformly exercised by the Commission. (3) An individual cannot acquire title by adverse possession of a railroad right of way; neither can he, by mere acquiescence on the part of the railroad company acquire a property right in a railroad grade crossing. Railroad v. Tottman, 149 Mo. 657; Laddonia v. Day, 265 Mo. 383; Baker v. Railroad, 183 Mo. 312. (4) The circuit court rendered judgment against the railroad company, which was not a party to the proceedings in that court, requiring the restoration of a crossing which had been removed in obedience to a former order of the Commission. The action of the court was, therefore, the taking of the company's property without due process of law, in violation of the Fourteenth Amendment to the Federal Constitution. (5) The trial court was not authorized to substitute its judgment for that of the Public Service Commission. Sec. 10522, R. S. 1919; State ex rel. v. Pub. Serv. Comm., 272 S. W. 963.

*D. D. McDonald* and *J. P. Painter* for Public Service Commission.

(1) Courts, on reviewing orders of Public Service Commission, cannot replace its orders with others of their own, or even modify them, since the court cannot substitute its judgment for that of the Commission. Queens Gas Co. v. McCall, 219 N. Y. 84, 245 U. S. 345. (2) In a proceeding for review of an order of the Commission, the circuit court shall enter judgment either affirming or setting aside the order of the Commission under review, or remand the cause for further action. Sec. 10522, R. S. 1919. (3) The Commission not having jurisdiction to grant the relief requested in respondent's petition, its action in dismissing the application was proper. Kansas City v. Ry. Co., 229 S. W. 771; State ex rel. v. Pub. Serv. Comm., 275 Mo. 210; Sec. 10858, R. S. 1919. (4) The claim of special and peculiar interest of respondents based upon adverse possession and user raises a legal question over which the Commission has no jurisdiction. Han. & St. J. Ry. Co. v. Totman, 149 Mo. 657; Laddonia v. Day, 265 Mo. 383; Railroad v. Baker, 183 Mo. 312. (5) To invoke the jurisdiction of the Commission, powers must be such as will affect public interest rather than private rights. State ex rel. Tel. Co. v. Pub. Serv. Comm., 272 Mo. 627,

*Spradling & Dalton* for respondents.

(1)   The Public Service Commission had exclusive jurisdiction to hear the complaint with reference to the maintenance of the public crossing mentioned in the complaint.   The circuit court properly reversed and set aside the order of the Commission dismissing the complaint on the ground that it was without jurisdiction.   Section 10459, R. S. 1919.   (2)   The public crossing which did exist at the point in controversy continued to exist and was in existence at the time of the filing of the complaint by respondents.   Neither the order in Case 3782 nor the removal of the planking at the point in controversy affected the public crossing on the public highway, nor the rights of these respondents.   Applegate v. Director Gen. of Railroads, 226 S. W. 628; In re Twenty-third Street Traffic Way, 214 S. W. 109; Rude v. St. Louis, 93 Mo. 408; Autenrieth v. Railway, 36 Mo. App. 254; Putnam v. Railroad, 182 Mass. 351.   (3)   The Legislature itself could not deprive respondents of their special and peculiar property right in this public crossing, to-wit, the right of ingress and egress, without compensation and due process of law, and of course the Commission could not do so.   Secs. 30 and 21, art. 2, Mo. Constitution; Press v. Penny & Gentles, 242 Mo. 98; Gorman v. Railroad, 255 Mo. 482; Versterg v. Railroad, 250 Mo. 61; Knapp, Stout & Co. v. St. Louis, 153 Mo. 560.   (4)   Abutting owners have rights of easement and access to their property over a railroad right of way in a public street or highway without acquiring those rights by adverse possession from the railroad and the railroad's right is subject to the right of the public in the highway.   Jackson v. Railroad, 189 S. W. 383; Torrance v. Pryor, 210 S. W. 432; Knapp, Stout & Co., v. Railroad, 126 Mo. 26; Esler v. Railroad, 109 Mo. App. 580; Klennayde v. Railroad, 45 Mo. 255; Lockwood v. Railroad, 122 Mo. 86; Sherlock v. Railroad, 142 Mo. 172.

WHITE, J.—The appeal is from a judgment of the Circuit Court of Cape Girardeau County, by which judgment that court set aside an order of the Public Service Commission entered in Case No. 4269, refusing to restore a former railroad crossing in the town of Delta, a village of about two hundred inhabitants, in Cape Girardeau County.

The railroad at that point runs almost north and south, the greater part of the village being on the west side of the track.   In 1923 the authorities of the village presented to the Public Service Commission an application to have a grade crossing established over the right of way of the railroad company at McKinley Street.   The purpose of the proposed crossing was to enable persons living east of the railroad to cross over to that part of the village on the west, through which

a highway ran approximately parallel with the railroad tracks. That proceeding was known as Case No. 3782. There was already a crossing over the right of way and railroad track, 504 feet north of McKinley Street. The relators here, W. H. Rutledge and G. F. Snyder, and one A. W. Bohnstedt all owned property and lived east of the railroad track and had access to their homes by that crossing. The property of Rutledge lay just outside the village limits, while that of Snyder and that of Bohnstedt lay within the village limits. A road extended along between their properties and the railroad tracks. It was a blind alley, had no outlet to McKinley Street, but connected with the crossing over the railroad tracks which led into the highway on the west side of the tracks. The evidence showed there was no other means of ingress and egress. The evidence further showed its use as a public crossing for a period of thirty-five years. For thirty years Rutledge had lived there and used it, and Snyder had used it for only a few years.

On the hearing of Case No. 3782, the Commission found that the crossing 504 feet north of the proposed crossing over McKinley Street would be of no practical use after the construction of the McKinley Street crossing, and ordered it discontinued. The report of the Commission, filed October 13, 1923, contained this finding:

"That said crossing 504 feet north was not a public crossing, there being no street whatever leading to it, and that the same is not recognized by the said village as a public crossing, according to the testimony of the mayor and one of its aldermen. That so far as the village was concerned the same could be abandoned, and should be, as it was not a crossing where any public road or street could be used in reaching it."

In pursuance of that order of the Commission, in November, 1926, the railroad company took up and removed the planks of the crossing. The evidence showed that the relators in this case afterwards did use it by "bumping the rails."

From the answer of the railroad company it further appears that in September, 1924, the village of Delta filed an application before the Commission in a case known as No. 4099, seeking to reestablish the grade crossing thus removed. But the Commission, deeming the matter involved in that proceeding fully determined in Case No. 3782, dismissed the complaint and refused to make the order.

The relators here first filed a suit in the Circuit Court of Cape Girardeau County seeking to enjoin the railroad company from removing and obstructing the crossing under consideration, and that injunction proceeding was dismissed by the circuit court on the ground that jurisdiction of public crossings was within the Public Service Commission. The relators then filed their complaint in this case, No. 4269, before the Commission, November 26, 1924, asking

the Commission to order the Missouri Pacific Railroad Company to restore the crossing to its original condition as it existed before November, 1924. In their complaint the relators alleged that the crossing 504 feet north of McKinley Street, as a public crossing had been in open, continuous, adverse and notorious use for a period of thirty-five years, and during that period there had been no effort by defendant to prevent or question the use of the crossing by complainants and their grantors, or by the public; that the removal of said crossing and obstruction of the use of the same by the defendant entail··· a special and peculiar injury to the complainants (relators here) in that it diminished the value of their real estate and destroyed the only means by which they could reach the public highway lying west of said railroad, and obstructed the only means of ingress and egress of their property.

Evidence was taken, as stated, which supported the allegation of the petition on all questions of fact alleged.

The Commission, after hearing the evidence, found the facts substantially as alleged by complainants. It found that there was an alley sixteen feet wide along and adjoining the right of way of the railroad company on the east side of the track, and between the right of way and the property occupied by Rutledge and Bohnstedt, which extends to within 135 feet of McKinley Street; that the crossing 504 feet north of McKinley Street had been ordered abandoned because of no practical use; that the purpose of this proceeding was to establish a crossing over the right of way of the railroad at that point for the accommodation of the two complainants and Mr. Bohnstedt.

The Commission then decided that it would not undertake to determine controversies between individuals and corporations as to construction of private crossings; that its authority was limited to cases where the safety of the public and employees, or service to the public are affected. The Commission further ruled that its previous orders in the premises had become final, but reached this decision:

"The complainants were not parties to the case referred to by defendant, and if we were called upon to determine their status in a judicial proceeding we would doubtless hold that they are not bound thereby. However, this is not a judicial forum and the doctrine of *res adjudicata* cannot appear to conclude the exercise of the functions of an administrative arm of the State Government like that of the Public Service Commission."

The Commission then suggested that the village of Delta might relieve the situation by extending the alley in front of the complainants' property 135 feet to McKinley Street, and if the village of Delta failed to secure such alley way the railroad company should establish the private crossing for the complainants. The Commission

then dismissed the proceeding on the ground that it was without jurisdiction, and the public was adequately served by the crossing at McKinley Street.

The relators then sued out a writ of *certiorari* in the Circuit Court of Cape Girardeau County, and on a review of the matter the record, proceedings and evidence offered in Case No. 4269 was brought before the circuit court. Also, the evidence and the proceedings in Case No. 3782 were offered in evidence and considered by the court. The trial court then found:

"That the Public Service Commission exceeded its jurisdiction by its order in Case No. 3782; that the complainants in this case were not bound by it; that they had a special and peculiar interest in the crossing, different in kind from that of the general public, and that the crossing was the sole means of ingress and egress to their property and they could not be deprived of their interest in said crossing without due process of law."

The order of the Public Service Commission in Case No. 4269, dismissing the complaint, was set aside and the cause remanded to the Public Service Commission, with directions to grant the relief prayed for. From that judgment the Public Service Commission prosecuted its appeal to this court. The Public Service Commission and the Missouri Pacific Railroad Company each had filed briefs asking this court to reverse the judgment of the trial court.

I. Under Section 10459, Revised Statutes 1919, the Public Service Commission has exclusive power to determine the manner in which and the particular point where a railroad company may cross a public highway. It is also authorized to abolish such crossings under certain conditions or circumstances. This court has held that when the Public Service Commission determines the particular point of a crossing over railroad tracks, the authority thus exercised is a police power solely for the public safety and a mere limitation upon the power of eminent domain delegated to municipalities; that the city has authority to condemn the *locus* for street purposes. [City of Kirksville v. Hines, 285 Mo. l. c. 240-241; State v. Public Service Commission, 272 S. W. l. c. 960.] Under those holdings it may be doubted whether, under the facts, the Public Service Commission had authority to order discontinuance of the crossing 504 feet north of McKinley Street. The Missouri Pacific Railroad Company in its brief and argument points out that the Public Service Commission has power to abolish *grade crossings* in the exercise of police power in the interest of public safety, and cites authorities in support of the proposition. But the crossing in this case was not abolished because it was dangerous, nor for any reason affecting public safety. It was

abolished solély because it was of no further use to the public, and offered a convenience to only three persons.

II. The Public Service Commission exercises no judicial functions. It has no authority to adjudicate and determine individual or personal rights (State ex rel. Railroad v. Pub. Serv. Comm., 303 Mo. 1. c. 219; Lusk v. Atkinson, 268 Mo. 1. c. 116-117) because, under the Constitution the Legislature has no power or authority to invest such commission with judicial powers. It has no authority beyond the express and literal terms of the Public Service Commission Act.

In this case the complainants come and ask to have the crossing restored as it was before it was discontinued by the order in Case No. 3782, because it was ordered abolished without notice and without a hearing, and because they had a special and a peculiar interest in said crossing different in kind from that of the general public, and because that special and peculiar interest had been acquired by thirty-five years of adverse using. In other words, they plant their case squarely on the ground of the special and individual rights which they claim to possess. Manifestly, if they had had a contract with the railroad company whereby this crossing was established and maintained by that company, the Public Service Commission would have no jurisdiction to entertain any complaint in reference to it. If they have acquired the right by prescription to use it, different from the right of the general public, they are in the same position as if they had a contract with the railroad company, and a determination of their rights in the premises requires a judicial investigation of the validity of their claims and of the method by which their rights were acquired. That is a function which the Public Service Commission cannot discharge.

The relators complain that the order in Case No. 3782 was void; that the Commission had no power to make it, and relators are not bound by it because they were not notified and were denied a hearing. If the Commission had authority to make the order in any event, relators were not entitled to a hearing. The Commission exercised no judicial functions, and if it undertakes to determine matters, such as the rights of private persons, it would be attempting to discharge the functions of a court, and its acts would be void. Notice to parties affected would not make such proceedings valid. If the order complained of is void, it is not because relators had no notice, but because the Commission had no jurisdiction to entertain the issues.

No doubt the Commission has authority to abolish without notice any crossing in which only the public is concerned. But several questions arise which we find it unnecessary to consider: whether the relators could acquire a special interest in a public crossing; whether the facts could show that, as between relators and the Missouri Pa-

cific Railroad Company, this was not a public crossing, but a private one; whether some use of a private crossing by the public would change its character from a private to a public crossing; whether under the facts in this case the only use of the crossing by others than relators was incidental to its private character 'as access to their property. What has already been said shows that such questions are quite beside the issues in this case.

The Commission contends that this is nothing more nor less than an application to have the Commission establish a crossing where one does not now exist, and for that reason among others declines to entertain the proceeding. And that, in effect, is what the relators ask. The circuit court is limited by the statute, Section 10522, to an affirmance or a reversal of the order of the Commission under review. It could not make any new orders, nor consider any evidence that was not before the Commission. The trial court, however, did not attempt to do other than to order the Commission to reverse its ruling. Even this it could not do because the Commission had no jurisdiction in the first instance to entertain the proceeding.

It is not empowered to adjudicate any individual and personal rights in relation to it. The only ground upon which the relators claim they have a right to relief is for the reason that their peculiar and special interests are adversely affected; that they are individually damaged by the abandonment and discontinuance of the crossing—a claim that can be determined only by judicial investigation in a proceeding in court.

The judgment of the circuit court is reversed and the cause remanded, with directions to dismiss the proceeding.